DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from the Lucas County Court of Common Pleas, Juvenile Division, which adjudicated appellant Jesse C. a delinquent after finding that the state had proven allegations of gross sexual imposition beyond a reasonable doubt. Because we find that the judgment was not supported by sufficient evidence, we reverse.
In May 2000, delinquency complaints were filed against appellant alleging that he committed two counts of rape and two counts of gross sexual imposition. One count of gross sexual imposition, involving Maria D., was dismissed prior to the adjudication hearing because the witness failed to appear, and one count of rape, involving Ashley W., was dismissed following Ashley's testimony. A second count of rape, involving Melissa H., was reduced to gross sexual imposition and the court found that the state did not prove this charge beyond a reasonable doubt. That charge, therefore, was also dismissed. However, appellant was found guilty of another charge of gross sexual imposition involving a ten-year old girl named Cassandra W. Ashley, Melissa, and Cassandra are sisters.
Cassandra testified at the adjudication hearing. On direct examination, she testified that appellant lives two doors down from her and that he would come to her house almost every day to talk to her mother, to watch television, and to play with her sisters. She testified that on two occasions, appellant "tried to kiss [her]" and that he "tried to touch [her] private parts but [she] moved his hands away." When asked to show where her private parts are, Cassandra initially crossed her arms over her torso, and the following exchange took place:
 "MS. KIRKHOPE [the prosecutor]: Will the record reflect that she had her arms over her chest?
 "MR. WESTMEYER [appellant's attorney] I would object. She had her arms crossed on her shoulder. I do not think that is an adequate description."
The objection was sustained, and after further questioning, Cassandra pointed to and identified her "chest." When asked what kind of touching appellant tried to do, Cassandra stated that he put his hand down her shirt. She testified that these events happened after school, "when [her] ma was out feeding the dogs or something." She could not, on direct examination, recall what year these events happened or the time of the year that they happened. On cross-examination, the following dialogue took place:
 "Q: Did he allegedly only try to grab you one time on each of those occasions?
"A: Yeah.
"Q: And he was unsuccessful, you pushed him away?
"A: Yeah."
Cassandra again stated that she did not know when these events happened, but she stated that she was wearing short sleeves at the time. On redirect examination she testified that one of these events happened in January 2000 and one in February 2000. She reported these events to her school counselor later in the school year.
Appellant's sister, Randi, testified for the defense. (Both Randi and appellant live with their mother.) According to Randi, Cassandra and her sisters had been over to her house several times and the girls had made phone calls to appellant at home.[1] She testified that appellant wanted nothing to do with the girls, that he was "mad" about the phone calls, and that he wanted the calls to stop. In fact, appellant repeatedly hung up on the girls. According to Randi, appellant never called the girls and she never saw him doing anything inappropriate with them.
Appellant's mother, Kathryn, also testified. She, too, testified that appellant never called the girls but that the girls called appellant on numerous occasions.
Appellant testified on his own behalf. He denied all of the allegations against him. He also testified that the girls (Cassandra and her sisters) called him on the phone and that he would "yell at them and tell them that [he] was going to tell their parents." Appellant testified that he had, in fact, told the parents about the calls and the parents would "just blow it off like it never happened." On cross-examination, appellant testified that he had a "very good relationship" with Cassandra's parents and that they trusted him to be in their house and play with their kids. However, appellant stated that he went to the house to visit with the parents, not the children. When asked again about the girls' phone calls to him, appellant testified that he did not like the calls, adding:
 "Because they would call like I was dating them or something like they didn't call just to see what's up, they would call and say things over the phone like I miss you and I want you to come over and oh, all these things that just made me mad."
Appellant denied being in the house with the children when the parents were gone, and he denied ever going to the girls' bedroom without the parents.
Finally, Joshua, appellant's friend, testified. Joshua stated that he had gone several times with appellant to the girls' house to "[e]ither split wood, work on his van, hook a car radio or something up, watch their kids for a little bit." He stated that he never saw appellant touch the girls inappropriately. He testified that the girls irritated appellant and appellant would ignore them most of the time.
Following the hearing, the court found that the state had proven the allegations of gross sexual imposition beyond a reasonable doubt and adjudicated appellant a delinquent. Appellant now appeals, setting forth the following assignments of error:
"APPELLANT'S ASSIGNMENTS OF ERROR
 "I. THE TRIAL COURT ERRED IN FINDING THE DEFENDANT/APPELLANT, JESSE [C], DELINQUENT OF GROSS SEXUAL IMPOSITION REGARDING CASSANDRA [W]
 "A. THE TRIAL COURT'S DECISION FINDING DEFENDANT/APPELLANT DELINQUENT OF GROSS SEXUAL IMPOSITION REGARDING CASSANDRA [W] IS CONTRARY TO THE SUFFICIENCY OF THE EVIDENCE.
 "B. THE TRIAL COURT'S DECISION FINDING DEFENDANT/APPELLANT DELINQUENT OF GROSS SEXUAL IMPOSITION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
We have previously recognized that, although juvenile proceedings are civil proceedings, due process requires that juveniles have certain protections guaranteed to criminal defendants, including the right to have allegations proven beyond a reasonable doubt. In the Matter of: Eric B. (Oct. 26, 2001), Huron App. No. H-01-019, unreported. Thus, we review juvenile delinquency adjudications using the same weight and sufficiency standards that we would use for criminal defendants. Id.
"Weight of the evidence" and "sufficiency of the evidence" are two distinct legal concepts. State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus, reconsideration denied (1997),78 Ohio St.3d 1451. "Sufficiency of the evidence" is a legal standard that the court applies to determine if a case should go to a jury or to determine whether there is sufficient evidence to support a verdict.Id. at 386, quoting Black's Law Dictionary (6 Ed. 1990) 1433. According to the Supreme Court of Ohio, "sufficiency is a test of adequacy."Thompkins, 78 Ohio St.3d at 386. In contrast, "weight of the evidence" refers to the jury's resolution of conflicting testimony. Id. at 387. In determining whether a verdict is against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "* * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 387.
Appellant was adjudicated delinquent for acts that, had he been an adult, would have constituted gross sexual imposition, a violation of R.C. 2907.05(A)(4). That section provides:
 "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
"* * *
 "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
"Sexual contact" is defined in R.C. 2907.01(B) as:
 "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
Addressing the sufficiency argument first, we find that the judgment is not supported by sufficient evidence. First, there was no actual evidence that appellant touched any erogenous zone on Cassandra. Cassandra testified that appellant put his hand down her shirt and "tried" to touch her "chest," but she also admitted that he was unsuccessful in doing so as she pushed him away. Further, Cassandra gave confusing testimony about when these acts occurred. Without evidence that appellant actually touched an erogenous zone, the evidence is insufficient to support a conviction for gross sexual imposition. We find assignment of error I-A well-taken, and we find it unnecessary to address assignment of error I-B.
Upon consideration whereof, we find that substantial justice was not done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is reversed. Appellee is ordered to pay the court costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J. and Richard W. Knepper, J. concur.
[1] On cross-examination, Cassandra admitted that she witnessed Ashley making phone calls to appellant.